## Case No. 13,598.

SULLIVAN et al. v. SULLIVAN et al.

[Brunner, Col. Cas. 642: 21 Law Rep. 531; 3 Wkly. Gaz. 126.] [1]

Circuit Court, D. Massachusetts. 1856.

TRUSTS—VENDOR AND PURCHASER—ADEQUACY OF PRICE—DEED—LONG ACQUIESCENCE—EQUITY PLEADING—FRAUD.

1. An assignment by a cestui que trust, of an equitable interest by way of contingent remainder for a valuable consideration, passes the interest of the assignor, and renders the assignee capable, as cestui que trust, of releasing the trustees.

2. A conveyance to a parent by a child recently of age is prima facie valid, and it is incumbent on the party attacking it to show undue influence; such a conveyance is not viewed as a sale, but rather as family arrangement, the validity of which does not depend on the adequacy of the price.

3. A general allegation of fraud and duress is not sufficient.

4. Long acquiescence and lapse of time is a good ground against permitting a deed to be impeached as fraudulent.

[Cited in Badger v. Badger, Case No. 718.]

This was a suit in equity wherein John L. Sullivan, in his own right and as guardian of his daughter Emily Sullivan, an insane person, is complainant, and the representatives of William Sullivan and Jonathan Amory, who are deceased, together with Thomas Russell Sullivan and Elizabeth Sullivan, children of the complainant, were made defendants. The bill stated that John L. Sullivan and Elizabeth, his wife, in her right, being seized of certain lands which it was advantageous to sell, and Elizabeth being insane, and consequently incompetent to join in their conveyance, two resolves were passed by the legislature of the state of Massachusetts, the first in 1809 and the second in 1810, whereby William Sullivan and Jonathan Amory were empowered to sell and convey these lands, first giving bond to the judge of probate to invest the proceeds of such sales in personal estate, in their names, in trust, to permit John L. Sullivan, the complainant, to take the income during the joint lives of himself and his wife, then to permit the survivor of them to take the income during the residue of his or her life, and upon the decease of the survivor to transfer the capital to the heirs of the said Elizabeth. The bill further stated that the two trustees sold lands from time to time under this power, and received upwards of fourteen thousand dollars; but did not invest the same as their trust required, nor pay John L. the income. That Elizabeth, the wife of John L., died on the 16th day of April, 1854, leaving three children, who were living, and her only children, when the said resolves were passed, viz., the complainant

Emily and the defendants Thomas R. and Elizabeth, who are entitled to the trust fund after the decease of John L., their father. That Jonathan Amory died in 1828, and the defendant William Appleton was appointed his administrator. That William Sullivan died in 1839, and Richard Sullivan and William Appleton were his duly qualified executors. The bill charges that the pretense that John L., Emily, Thomas R., or Elizabeth ever released the trustees from all accountability is unfounded; that neither of them ever executed such release; and that if any deeds purporting or pretending to release the trustees were ever executed by them or either of them, "the execution thereof was obtained by duress and fraud." The bill prayed for an account, and for the appointment of trustees and the investment of the trust fund.

[2] [The answer of Richard Sullivan and William Appleton, among other things contains the following:

["These defendants further say that they have been 'informed and believe that the moneys so received, or a part thereof, were originally invested by the said trustees in certain personal estates at the special instance and request of the said John L., and in such manner as he considered most for the interest of himself and his family; and that the investments were changed from time to time, but never without his consent and request: and that, he being embarrassed at the time, the said trustees, or some one of them, allowed him to appropriate the same to his own use from time to time, or applied the same to payment of his debts in times of great urgency and at his earnest solicitation, and to save him from bankruptcy, and upon his promise and assurance that the said trust funds should be replaced, and they be indemnified from and against all liability on account thereof; and, in proof thereof, these defendants pray leave to refer to a certain bond of indemnity, signed and sealed by the said John L., bearing date the twenty-sixth day of August, A. D. eighteen hundred and sixteen, and by him delivered to the said Sullivan and Amory, which is in the words and figures following, to wit: (Then follows the penal part of the bond.) 'Whereas, the aforesaid Jonathan, Junr., and William, executed divers conveyances, transfers, and assignments, in virtue of the resolve which is hereto adjoined, and of other resolves before that resolve passed; and have in their trust and agency done such acts, matters and things from time to time as the said John L. hath conceived to be most beneficial in the premises; and as some of the acts by them done as aforesaid may not have been in conformity with said resolves, and it being the wish and intention of the said John L. completely to indemnify and save harmless the said

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission. 3 Wkly. Gaz. 126, contains only a partial report.]

[2] [From 21 Law Rep. 531.]

Jonathan Amory, Junr., and the said William Sullivan, and their respective heirs, executors, and administrators, against all losses, claims, and demands and damages, of whatsoever name or nature, which may happen, arise, be made or exist against the said Jonathan, Junr., and William, and their respective legal representatives aforesaid, in consequence of the acts or omissions of the said Jonathan, Junr., and William, or either of them, in the premises: Now the condition of this obligation is such that if the said John L. shall at all times hereafter completely. indemnify and save harmless the said Jonathan, Junr., and the said William, and their said respective legal representatives, against all claims, demands, losses and damages, of whatsoever name or nature, which may arise, happen or accrue out of or from their agency, in each, all, or any of the aforesaid resolves, or otherwise in their agency in the aforesaid matters and things, then this obligation shall be void, otherwise shall remain in full force, power and virtue. Jno. L. Sullivan. (L. S.) Signed, sealed, and delivered in presence of W. P. Mason, D. N. Bradford.'

["This defendant, the said Sullivan, further says, and the said Appleton believes it to be true. that after the date and delivery of the said bond, the said John L. continued to be in embarrassed circumstances, and made frequent applications to the said William Sullivan, and Jonathan Amory, Jr., and to this defendant, Richard Sullivan, for relief and assistance by way of loan, endorsement, or otherwise; and they, or some one of them, did from time to time render him assistance, but he wholly neglected to repay the trustees the moneys received by him belonging to said trust fund; and afterwards the said William, Richard and Jonathan refused to render him further assistance, unless he would restore the same, or give them satisfactory indemnity against their liabilities as trustees; and on or about the twenty-fifth day of May, A. D. eighteen hundred and twenty-one, the said Thomas R. Sullivan and Elizabeth Sullivan, two of the children of the said John L., being of age, the said John L. made known to them his situation in relation to the said trust fund, and the circumstances under which the same had been appropriated to his use, and requested them to exonerate the said trustees from all liability therefor, so far as they were interested; and in compliance with said request, and upon the consideration that the said John L. was thereby released and exonerated, pro tanto, from his liability and promise to restore said fund. and of future advances and assistance to be made to him by the said William, Richard and Jonathan, they, the said Thomas R. and Elizabeth, did, on the seventeenth day of August, A. D. eighteen hundred and twenty-one, execute and deliver to the said William and Jonathan, Junr., a full release and discharge of all claims whatsoever which they had or might have against them by reason of their being trustees as aforesaid, and by reason of anything done, or omitted to be done by them, in the execution of said trusts, which said deed of release is in the words and figures following, to wit: 'Know all men by these presents, that we, Thomas Russell Sullivan and Elizabeth Sullivan, children of John L. Sullivan, of Boston, in the state of Massachusetts, and Elizabeth his wife. being fully apprised that Jonathan Amory and William Sullivan, of said Boston, trustees, under a certain act or resolve of the legislature, of the state aforesaid. have, at the request of our said father, paid over or applied to his use the proceeds of sales of real estate by them sold under the trust aforesaid: Now, to the end that said Jonathan and William, and their legal representatives, may be discharged from accountability by reason of any of their doings as aforesaid, and in consideration of one dollar to each of us paid, the receipt whereof we do hereby respectively acknowledge, do hereby release, acquit; and discharge and forever remit to them, the said Jonathan and William, their heirs and legal representatives, all claim, demand, actions and causes of action, which we or either of us have, or are or may be at any time hereafter entitled to have, against them, or either of them, by reason of any act, matter or thing, which they, or either of them, have done or performed, suffered or permitted, under the trust aforesaid; so that neither we, nor either of our respective heirs, executors and administrators, shall have any claim or demand, action, suit, or process, in law or in equity, whatsoever, against them or either of them; but that, on the contrary, this release and discharge shall be a perpetual bar against all manner of actions or suits, at law or in equity. which may, in our right, be commenced or instituted against them, or either of them. as aforesaid; and as such, the same may be pleaded, and shall be held a complete bar. And we do hereby further covenant, each of us for ourselves and our respective legal representatives, with the aforesaid Amory and Sullivan, and each of them, and the legal representatives of each of them, that we, our heirs, executors, and administrators, respectively, will make and execute such further release and discharge whenever thereto, by them, or either of them, requested, as they, or either of them, may or shall hereafter request. In testimony whereof, we, the said Thomas R. Sullivan and Elizabeth Sullivan, have hereunto set our hands and seals this seventeenth day of August, A. D. eighteen hundred and twenty-one. (Signed) Thomas R. Sullivan. Elizabeth Sullivan. The words, "against them or either of them as aforesaid," being first interlined. Also, the word "Boston," 1st page. In presence of us. (Signed) Witness: John P. B. Storer. James Sullivan.'

["And these defendants say that they are informed and believe and allege, that when the said deed was executed, the said Elizabeth was perfectly sane and intelligent, and capable of appreciating the circumstances of the case, and the interest she was to relinquish; that she and the said Thomas R. were made acquainted with all the facts necessary to form a judgment as to the reasonableness and propriety of their executing the same, and that they did so freely, voluntarily, and of their own accord, and for the considerations before stated, and none other. And these defendants expressly deny that said deed of release was executed by the said Thomas R. and Elizabeth, or either of them, under circumstances of fraud or duress, and insist that the same was done by them freely and voluntarily, and for a good and valuable consideration. This defendant, the said Richard Sullivan, further says, and the said Appleton believes it to be true, that after the execution of the said deed of release, the said William Sullivan advanced other sums of money to the said John L., and expended large sums of money for the support and education of his wife and children, none of which were ever repaid by the said John L. or any other person; and on or about the twenty-seventh day of September, A. D. eighteen hundred and twenty-six, the said Emily Sullivan being of full age, she and the said Thomas, for the consideration therein recited, executed and delivered to the said John L. a deed of assignment of all their residuary interest in said trust fund. which said deed is as follows, to wit: 'Whereas, John L. Sullivan, heretofore of Boston, in the county of Suffolk and state of Massachusetts, at present residing in the city of New York, Esquire, heretofore obtained in the legislature of Massachusetts. the passing of certain resolves, respectively bearing date seventeenth day of June, one thousand eight hundred and seven, and the second day of March, one thousand eight hundred and ten, in and by which said resolves, Jonathan Amory, at the time called junior, but not now junior, and William Sullivan of said Boston, Esquires, were authorized and empowered to make and execute, in due form of law, deeds of conveyance of any real estate whereof the said John. and Elizabeth his wife, were seized in her right, and were required to give bond to the judge of probate in the county of Suffolk, to invest the proceeds of such sales in personal estate, to pay the income thereof to the said John and Elizabeth during their joint lives; and to the said John for life, he surviving her; and to her for life, she surviving him; and, after the decease of both of them, to transfer the principal to her heirs at law; and whereas, in pursuance of this authority, the said Amory and W. Sullivan, at said John L. Sullivan's request. conveyed unto Israel Thorndike, by deed dated the seventeenth day of November, eighteen hundred and nine, said Elizabeth's right to certain lands situate on Summer street in Boston, part of her late father's estate, for the consideration of eight thousand seven hundred and fifty dollars; and to Samuel Hastings an undivided twentieth of estate in Newbury street, on the sixth of January, in the same year, for the consideration of three hundred dollars; and to Wm. Sawyer and Joseph Thomson, land on Charlestown Square, on the eighteenth of April, eighteen hundred and sixteen, for the consideration of three thousand dollars; and to Thomas J. Goodwin, land on Main street, in Charlestown on the nineteenth day of December, eighteen hundred and eighteen, for the consideration of twenty-three hundred dollars; amounting in all to fourteen thousand three hundred and fifty dollars, to which sum of fourteen thousand three hundred and fifty dollars the children of said Elizabeth will be entitled, on the decease of both of them, the said John L. and Elizabeth: Now, know all persons, that we, Thomas Russell Sullivan, of Keene, in the state of New Hampshire, clerk, and Emily Sullivan, of Albany, in the state of New York, single woman, two of the children of said John L. and Elizabeth, for and in consideration of one dollar to each of us respectively paid, and for divers other good and valuable considerations, consisting of advances made in anticipation of our residuary right in said trust fund, do hereby give, grant, alien, sell, and convey and assign unto the said John L. Sullivan, all our right, title, interest and estate in the said trust property now in the hands of Jonathan Amory (heretofore called Jonathan Amory, Junior,) and William Sullivan. To have and to hold all the same trust property in whatever manner the same has been or may be invested, unto him, the said John L. Sullivan, fully and absolutely discharged from all claims at and demands of us or either of us. And we do hereby authorize and require of the said Jonathan Amory and William Sullivan, to account with the said John L. Sullivan, our father, for the same property by them, so held in trust; and to pay over the same to him to the same effect in law or equity as they might, should or could account with and pay over to us. Meaning and intending hereby for the considerations aforesaid to enable the said John L. Sullivan, our father, to negotiate with the said Jonathan and William as to the same property in any manner which he may deem to be beneficial to him; intending, also, hereby to discharge the said Jonathan and William from all accountability to us respectively in the premises, so that they account with and satisfy the said John L. Sullivan; and we also hereby constitute and appoint the said John L. Sullivan our attorney, irrevocable in the premises, with full power to execute any deed or deeds, instruments or writings whatsoever, which we could or might execute in the premises, hereby declaring all acts done by our said father in the premises as obligatory as though done by us personally. In witness

of all which we have hereunto set our hands and seals the twenty-seventh day of September, in the year of our Lord one thousand eight hundred and twenty-six. Thomas Russell Sullivan. (Seal.) Emily Sullivan. (Seal.) Signed, sealed and delivered in presence of (signed) A. Wright, (signed) F. Alexander, (signed) Angelica Gilbert, Jr., (signed) Richard T. Treat, Witnesses to the signature of Emily Sullivan.'

["And on or about the thirtieth day of said September, the said John L. executed and delivered to the said William Sullivan and Jonathan Amory, a deed of release and discharge of all the interest in the said fund which he had, or to which he was entitled under said last mentioned instrument for the purpose of finally closing the said trust, and disposing of all the present and residuary interest of the said John L., Elizabeth. Thomas R. and Emily in the fund, and releasing the said trustees from all liability on account thereof, the said Elizabeth and Thomas R. having previously released their interest, which said last mentioned deed is in the words and figures following, to wit: 'Whereas an assignment has been made to me of a certain trust fund now in the hands of Jonathan Amory, heretofore called Jonathan Amory, Junr., and William Sullivan, names in the resolves which are referred to in the foregoing assignment to me, John L. Sullivan, formerly of Boston, now of the city of New York, Esquire, as appears by the aforegoing instrument: Now, know all men by these presents, that I, the said John L. Sullivan, for and in consideration of one dollar to me paid by said Jonathan and William, and in consideration of my indebtedness to them for divers payments by them heretofore made for me, and at my request to the full amount, and more than the aforesaid sum of fourteen thousand three hundred and fifty dollars, do hereby remise, release, and forever quitclaim unto them and their heirs and assigns, all my right, title, interest, claim and demand in the afore described trust fund; the whole whereof has been invested and employed by my order and direction, and with my full assent, and portions thereof withdrawn by me from time to time, for my necessary uses and purposes. And I do hereby, as matter of justice and right to said Jonathan and William, declare them to be absolved and released from their said trusts. The full amount and more than the amount of all the said trust fund having been applied to my use and at my request. And I do covenant with the said Jonathan and William, and their heirs, executors and administrators, that no suit, claim or process whatsoever, in law or equity, shall ever be instituted against them for or on account of the use and application of the aforesaid fund so created and vested through their agency, at my request, intending hereby fully and absolutely to end and close this concern of trustship forever. In witness of all which I have hereunto set my hand and seal this

thirtieth day of September, in the year of our Lord one thousand eight hundred and twenty-six. (Signed) John L. Sullivan. (Seal.) Signed, sealed and delivered in presence of Angelica Gilbert, Jr. Richard S. Treat.'

["This defendant, the said Richard Sullivan, further says, and the said Appleton believes it to be true, that when the said deed was executed by the said Thomas R. and Emily, she was perfectly sane and intelligent, fully capable to appreciate the circumstances of the case, and the valuable interest thereby assigned; that they have been informed, and believe and so allege, that she and the said Thomas R. were made acquainted with all the facts necessary to form a judgment as to the reasonableness and propriety of their executing the same, and that they did so voluntarily and of their own accord, and for the considerations therein stated. And these defendants expressly deny, upon their knowledge, information and belief, that the said deed was executed by the said Thomas R. and Elizabeth, or either of them, under circumstances of fraud or duress, and insist that the same was done by them voluntarily and knowingly, and for a good and valuable consideration. And these defendants say that, by the said several deeds, the said John L., Thomas R., Elizabeth and Emily, for good and valuable considerations did assign, remise, release, and forever quitclaim unto the said William Sullivan and Jonathan Amory, all their respective interest, present or reversionary, in and to said trust fund, and all claims and demands which they or either of them had or could have against them, the said Sullivan and Amory, on account of anything done or omitted to be done by them in the care, management and disposal of said trust fund, or in any wise in relation thereto; and these defendants insist upon said releases and claim the same benefit thereof as if they had pleaded the same. And these defendants say that for many years after the said Emily executed said deed in the year eighteen hundred and twenty-six, she continued to be of sane and intelligent mind, and was well acquainted with all the circumstances relating to said trust fund, and the nature and effect of her said deed, and that to their knowledge or belief she never repudiated the same, or denied her obligation under the same, or pretended to have any claims or demands upon the said trustees on account thereof; and these defendants submit to the judgment of this honorable court, whether, after so many years perfect and entire acquiescence therein by the said Emily, during which time she was sane and intelligent and able to act herself, it is competent for any person being, or pretending to be her guardian, to set up and maintain in her behalf this present suit."][2]

Mr. Hutchins, for complainant.
Mr. Choate and F. C. Loring, contra.

---

[2] [From 21 Law Rep. 531.]

CURTIS, Circuit Justice. It was properly conceded by the complainant's counsel at the hearing, that John L. Sullivan, in his own right, and independent of the claims of his children, could not have the aid of a court of equity to compel the representatives of the trustees to replace this trust fund. Because he not only consented to and participated in whatever breaches of trust were committed, but was from time to time the recipient of the trust property, and, with a knowledge of all the facts, released the trustees from accountability, and bound himself to save them harmless against all claims. Beyond all question therefore, he cannot now complain of those breaches of trust.

The right of his daughter Emily to an account requires a distinct examination. It appears that she executed an instrument, bearing date on the 27th day of September, 1826, which purported to convey to her father all her right to the trust fund, authorizing and requiring the trustees to account with the father, and empowering them to negotiate with him for such disposition of the trust funds as might be satisfactory to him. It further appears that immediately after the execution of this deed, the father received from one of the trustees the sum of twenty-five hundred dollars, and finally released them from all accountability; and this assignment by Emily, and release by John L., her father, and her acquiescence in the assignment down to the year 1842, when she became insane, and the acquiescence of John L., her father and guardian, down to the filing of this bill in December, 1854, are set up and relied on by the answer as a bar to the claim on behalf of Emily, for an account of the trust fund. To this it is replied by the complainant that nothing passed by the deed which Emily executed, because she had then no interest. It is not strictly true that she had then no interest. Her right to participate in the trust fund was contingent on her survivorship of her mother. But it was such an expectancy as is recognized by a court of equity as a subject for a valid contract, the specific execution of which may be decreed, or if the instrument of assignment be properly drawn the assignee may be placed by it in the same situation as the assignor was, and substituted to all the rights which the assignor could in any event have. Even a court of law considers the deed of an expectant heir in the lifetime of his ancestor, accompanied by a covenant of warranty, as effectual to pass the title which subsequently descends on the heir, that title enuring by way of estoppel to the assignee. Trull v. Eastman, 3 Metc. [Mass.] 121. And undoubtedly a court of equity, which in many cases treats that as done which was agreed to be done, will not allow a less effectual operation to such a covenant. And I consider it to be settled that an assignment by a cestui que trust of an equitable interest by way of a contingent remainder in either realty or personalty, made for a valuable consideration, is effectual to pass the interest of the assignor, and substitute the assignee in place of the assignor as to all the rights which in any event might or would have accrued to the assignor. In Varick v. Edwards, Hoff. Ch. 382, the vice-chancellor reviewed the decisions on this subject, and it is quite unnecessary to restate them here. I apprehend there has been no real question on this point for many years; but in recent times the question has been much agitated whether an assignment of an expectant interest, either vested or contingent, made by way of gift, without any valuable consideration, would enable a mere volunteer to claim the aid of a court of equity. In Meek v. Kettlewell, 1 Hare, 464, decided by Vice Chancellor Wigram, in 1842, it was held that a voluntary assignment of an expectant interest in a trust fund did not create a trust in favor of the assignee which a court of equity would enforce, and this decision was affirmed on appeal, by Lord Chancellor Cottenham, in 1843. 1 Phil. Ch. 342. In Kekewich v. Manning, Vice Chancellor Wigram repeated this decision; but on appeal, after a very elaborate examination of the authorities, and a very attentive consideration of the principles of equity appropriate to the question, Lord Cranworth and Sir J. L. Knight Bruce, lords justices, decided that such an assignment, though voluntary, was a complete alienation, and created a trust enforcible in equity by the assignee. 12 Eng. Law & Eq. 120, Dec. 1851. This decision professes to overrule Meek v. Kettlewell, which I infer from Voyle v. Hughes, decided by Vice Chancellor Stuart in 1854 (23 Eng. Law & Eq. 271), is no longer law in Westminster Hall.

The distinction between an application by a volunteer to a court of equity, to enforce a promise to create a trust, and to enforce a trust already created, on which the present English doctrine rests, was recognized in Neves v. Scott, 9 How. [50 U. S.] 211; Id., 13 How. [54 U. S.] 268. And my opinion is that the assignment now in question, if merely voluntary, was yet sufficient in point of law to create a trust in favor of John L. Sullivan, by his daughter Emily, as it respects all her rights and interest in the trust fund, which a court of equity would enforce in his favor, provided the assignment was not rendered invalid by some extraneous cause. And that consequently, by virtue of such an assignment, if otherwise valid, John L. Sulivan became the cestui que trust, and as such, capable of releasing the trustees; and, further, that as he became the cestui que trust as respects Emily's share, and as he had already consented to the breaches of trust, of which complaint is now made, he is thereby, as well as by his subsequent release under seal, by which he obtained the further sum of twenty-five hundred dollars, debarred from now complaining of those

breaches of trust. See Nail v. Punter, 5 Sim. 555.

So that it only remains to inquire whether the assignment from Emily Sullivan to John L. Sullivan, her father, was a valid transaction. It purports, on its face, to be made in consideration of one dollar, "and divers other good considerations, and valuable considerations, consisting of advances made in anticipation of our residuary right in said trust fund." It is not stated in the deed to whom the advances were made. In point of fact they were made to the father. For though it appears that moneys were furnished by the children of John L. by his brother, William Sullivan, one of the trustees, yet it is quite apparent, I think, that they were the free gift of the uncle to his nieces and nephews, and were not intended by way of advancement on account of their expectant interest in the trust fund. Prima facie, therefore, as well as upon the proofs, the assignment from Emily to her father appears to have been made without any valuable pecuniary consideration. If this transaction had been between strangers, it would have been the duty of the court to set it aside; for an assignment of an expectant interest by way of remainder requires for its support not only a valuable consideration, but the payment by the purchaser of the full market value of the interest conveyed. But a transfer of an expectant interest by a child to a parent is not viewed by a court of equity as the sale of the interest, but as a family arrangement, the validity of which is not to be tested by an inquiry whether an adequate price was paid. In Bellamy v. Sabine, 2 Phil. Ch. 439. the master of rolls said: "It has often been decided that in such transactions between a father and son the ordinary rules which are applied to the acts of strangers are not to regulate the judgment of this court. In such cases apparent inadequacy of consideration, and the circumstance that the property is reversionary, have but little weight. Fraud will indeed vitiate these, as well as all other transactions; but arrangements between members of the same family to assist their several objects, or relieve their several necessities, are affected by so many peculiar considerations, and are influenced by so many different motives, that they have been wisely withdrawn from the influence of the ordinary rules by which this court is guided in adjudicating between other parties." The case of Tweddell v. Tweddell, Turn. & R. 1, and the authorities upon which it proceeded, establish this distinction. See, also, Wallace v. Wallace, 2 Dru. & War. 452. The supreme court, in Jenkins v. Pye, 12 Pet. [37 U. S.] 141, proceeded on this distinction, which must be considered as firmly settled, both in America and in England. But I apprehend there is an important difference between the English law and our own, in respect to the proofs required to be made by a parent who takes a voluntary conveyance from his child. It is

agreed that such transactions are to be watched with much jealousy, for the purpose of detecting the operation of any undue influence, for which the relation of the parties affords means and opportunity; and it is also agreed that if ignorance of the rights conveyed, or undue influence is detected, the conveyance is to be set aside. But it seems to be settled in England that when a father obtains, by donation from a child recently come of age, a large pecuniary benefit, the burthen of proving that the transaction was righteous falls on the person taking the benefit. In Hoghton v. Hoghton, 11 Eng. Law & Eq. 134, the master of the rolls reviewed the authorities, and held that to be their effect. In Jenkins v. Pye, 11 Pet. [36 U. S.] 241, the supreme court had many of these decisions before them, and without expressing an opinion upon the existence of such a rule in England, distinctly and pointedly refused to establish it in the equity jurisprudence of the United States. The passage is too long to be here quoted; but the rule there laid down, and which the court must follow is, that such a conveyance is prima facie valid, and that it is incumbent on the party who denies its validity, to prove such an undue influence as requires the court to avoid the gift, and restore the parties to their former condition.

It follows that the assignment from Emily Sullivan to her father, John L. Sullivan, which is set up in the answer, is prima facie valid; and that it is incumbent on her guardian, who would impeach it, to allege in his bill and support by his proofs such facts as are sufficient to render the deed invalid. I say to allege such facts in the bill, for I apprehend it is always true, that when an answer sets up as a bar a deed which is prima facie valid, and the execution of which is admitted, the complainant can avoid that bar only by charging in his bill, and supporting by his proofs, such extraneous facts as render the deed invalid. Now this bill contains no such charge. It says that if Emily ever executed a release purporting to discharge the trustees from accountability, it was obtained by fraud and duress. But the instrument now in question is not such a release. And if it were, I should have much difficulty in holding that such a general charge would be sufficient to let the complainant in to prove that particular kind of fraud which a court of equity lays hold of as undue influence. It is not necessary to set forth minute facts, still less circumstances which tend to establish them; but the general rule is that particular acts of fraud must be stated. Myddleton v. Lord Kenyon, 2 Ves. Jr. 391, and note a; Munday v. Knight, 3 Hare, 497. It must be remembered, also, that if undue influence of a parent over a child was exerted in this case, it was by the complainant himself. It can hardly be supposed that the complainant by this general charge of fraud intended that he himself committed it. He has not charged by whom it was committed, or

what was its nature or character, still less in what acts it consisted. I think it would be very unsafe to rest a decree on so vague an allegation. But if this difficulty were overcome, I should still decline to investigate the merits of this transaction, because the lapse of time, and the death or alienation of mind of the principal parties, have rendered it a most hazardous task to attempt such an investigation, and have supplied the respondents with a ground of defense which, in my judgment, is impregnable. This deed of assignment from Emily to her father was executed in 1826. In 1828 Jonathan Amory died. In 1839 William Sullivan died. Emily continued sane until 1852; and down to that time there is no allegation in the bill, and no evidence that she ever felt or expressed any wish, or considered that she had any right to avoid the assignment. Her acquiescence for twenty-six years is complete, and was terminated only when she became incapable either of acquiescence or objection. It is said that her mother survived until 1854, and consequently her right continued to be contingent, and by way of remainder only, till that time. This is true. But it is also true that if the deed of assignment was voidable for undue influence, or any other extraneous cause, it was competent for her at any moment to file a bill to have it decreed to be void and delivered up to be canceled. And not only so, but as entitled even contingently to a remainder, she could have had the aid of a court of equity to protect the fund, and secure her rights therein; there being this distinction between acquiescence at law and in equity, that at law the right of the remainder man is treated as accruing only when the particular estate is terminated and his possessory right begins; while in equity the owner of even a contingent remainder in personalty may file his bill for the protection of the trust fund against breaches of trust which threaten its existence; and consequently as soon as he discovers such breach of trust, being sui juris, he begins voluntarily to delay proceedings. Andrew v. Wrigley, 4 Brown, Ch. 125. No explanation of this acquiescence is given or attempted by the bill. The case stands, therefore, upon the fact of such acquiescence for twenty-six years, the insanity of the complainant at the end of twenty-six years, and her consequent inability to restrain these proceedings which she may know to be unfounded, and the death of both of the trustees, and the consequent impossibility of obtaining from them such explanations and facts as might change the whole face of the transactions.

When we remember that what is to be investigated is a family transaction, that it involves and depends upon the particular circumstances of the parties, and the private and personal views and motives growing out of those circumstances, I think it must be admitted that an attempt to investigate it, after the lapse of twenty-eight years, and the

death or inability of the complainant and the trustees, would be far too hazardous an enterprise for a court of equity to attempt. And I take it to be clearly settled that no such attempt is to be made. In Jenkins v. Pye, already referred to, the supreme court held that after the lapse of eighteen years, and the death of the principal parties, the court ought not to interfere. Mr. Justice Catron differed with the other members of the court on some points, but he held the lapse of time to be fatal to the bill, and cites many authorities to the point. Many more might be cited, but I will refer only to McKnight v. Taylor, 1 How. [42 U. S.] 161, and Bowman v. Watten, Id. 189, and Roberts v. Tunstall, 4 Hare, 257, where the recent English cases are stated. Let a decree be entered dismissing the bill with costs.

Fraudulent Conveyance—Relief Barred by Long Acquiescence. See Badger v. Badger [Case No. 718], citing above case.